UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  	Misc. No. 11-mc-51061
 	Hon. John Corbett O'Meara
 	Hon. Gerald E. Rosen
LENNOX EMANUEL (P 59251)  	Hon. Gershwin A. Drain
_____/

MEMORANDUM OPINION AND ORDER
REGARDING PETITION FOR REINSTATEMENT

I. INTRODUCTION

This matter is presently before this panel of the Court on the Petition of Lennox Emanuel for the reinstatement of his license to practice law before the United States District Court and the United States Bankruptcy Court for the Eastern District of Michigan.  Mr. Emanuel was suspended from the practice of law in the Michigan state courts for a period of 30 days, effective January 28, 2016.  As a result of the State Bar suspension, pursuant to E.D. Mich. L.R. 83.22, on February 10, 2016, a reciprocal Order of Suspension from the practice of law in the U.S. District Court and U.S. Bankruptcy Court for the Eastern District of Michigan was entered.  Emanuel was reinstated to state court practice on March 7, 2016.  He thereafter filed the instant Petition for Reinstatement to practice law in the federal courts within the Eastern District of Michigan.

This three-judge panel was appointed to hear and decide the matter.  The Michigan Attorney Grievance Commission was appointed to serve as "of counsel" and

1

the Grievance Administrator was directed to prepare and file an investigative report. A hearing on the matter was thereafter commenced on June 6, 2016 and concluded on September 6, 2016.

Having had the opportunity to review and consider the hearing transcripts, the Grievance Administrator's reports, and the responses and replies thereto, the panel is now prepared to rule on this matter. This Memorandum Opinion and Order sets forth the panel's decision.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Emanuel's State Bar suspension arose out of a formal complaint filed by the Grievance Administrator of the Michigan Attorney Grievance Commission charging Emanuel with professional misconduct arising from a dispute regarding the allocation of attorney fees between Emanuel and his predecessor counsel after settlement of a client's personal injury claim. An evidentiary hearing on the matter was held before a panel of the Michigan Attorney Discipline Board. The Attorney Discipline Board found that Mr. Emanuel had engaged in the misconduct charged. Specifically, the Board found that Emanuel failed to deposit the settlement funds in an IOLTA or MRPC-compliant non-IOLTA account, in violation of MRPC 1.15(d), and failed to hold the disputed funds separate until the dispute was resolved, in violation of MRPC 1.15(c).[1]

---

[1] This was the second time that Mr. Emanuel was disciplined for such conduct. On May 9, 2011, Petitioner was issued a formal "Reprimand with Conditions" by the Michigan Attorney Discipline Board for his failure to hold property of his clients or third persons separate from his own and in an IOLTA account.

As a result of the State Bar suspension, pursuant to E.D. Mich. L.R. 83.22, on February 10, 2016, a reciprocal Order of Suspension from the practice of law in the U.S. District Court and U.S. Bankruptcy Court for the Eastern District of Michigan was entered by U.S. District Chief Judge Denise Page Hood.

The Michigan Attorney Discipline Board issued a Notice of Emanuel's Automatic Reinstatement to state court practice on March 7, 2016. Emanuel thereafter filed the instant Petition for Reinstatement to practice law in the federal courts within the Eastern District of Michigan. Pursuant to E.D. Mich. L.R. 83.22(g)(1), this three-judge panel was appointed to hear the matter, and the Michigan Attorney Grievance Commission was appointed to serve as "of counsel." The Grievance Administrator, thereafter, submitted a Federal Reinstatement Report on March 31, 2016, and a hearing was convened on the matter on June 6, 2016.

The Grievance Administrator's report raised several significant issues concerning Petitioner's veracity and temperament. In particular, the Grievance Administrator noted a number of misrepresentations that Mr. Emanuel had made, under oath, in a deposition of him taken in connection with a Section 1983 action Emanuel brought on his own behalf, *Emanuel v. Turfe, et al.,* EDMI No. 13-13175. The Section 1983 action arose out of Petitioner's September 2011 arrest on charges of "receiving and admitting a person for an act of prostitution," in violation of Detroit City Code §38-9-4(b), and the contemporaneous seizure of his car pursuant to the provisions of Michigan's nuisance-abatement statutes, M.C.L. §§ 600.3801-3841.

In his deposition in the Section 1983 action, Emanuel unequivocally testified that, other than the 2011 matter, he had never been a criminal defendant in any other case nor had he ever before ticketed for any act involving solicitation of prostitution.[2] However,

---

[2] Emanuel testified as follows:

Q [by defendants' attorney]: Other than the instant -- the incident that gives rise to this action, have you ever been named as a Defendant in any criminal matter?

A [by Mr. Emanuel]: No.

Q: Other than the incident that we're gonna get to that gives rise to this action, have you ever been arrested before, Mr. Emanuel?

A: No.

Q: Prior to September 28th of 2011, have you ever been ticketed for any act involving solicitation of prostitution?

A: No. . . . By the way, I object to this line of questioning. . . .

***

Q: Okay. And your testimony is that prior to September 28th, 2011, you've never received any ticket for involving --

A: No.

Q: -- any act of solicitation of prostitution?

A: No.

***

Q: Mr. Emanuel, isn't it true that you've been cited at -- on at least three times for solicitation?

A: No. I have not been cited three times for solicitation, because I would have been convicted. I was never cited.

4

court records establish that in September 2004, Petitioner was issued a citation and charged with "Offer to Engage the Services of Another for the Act of Prostitution," and that charge remained open and pending for a number of years -- during which time Mr. Emanuel made several court appearances -- until it was finally dismissed on the motion of the City Attorney just the year before Emanuel's deposition was taken.[3]  Wayne

---

> Q: Okay. Was your vehicle seized on September 13, 2004?
>
> A: I can't recall.
>
> ***
>
> Q: Do you remember your car being seized on April 14 of 2001?
>
> A: No, I do not.
>
> ***
>
> Q: Do you remember your vehicle being seized on October 23rd of 2000?
>
> A: No, I do not.
>
> ***
>
> Q: On September 13, 2004, do you remember receiving a ticket for an offer to engage service of another for the act of prostitution?
>
> A: I do not.
>
> Q: Do you remember appearing at the 36th District Court on that ticket?
>
> A: I do not.

[*See Emanuel v. Turfe*, No. 13-13175, Dkt. # 29-4, Emanuel Dep., pp. 23-24, 31-32].

[3]  Emanuel was represented in the 2004 case by Alison Folmar, whom he also denied ever having represented him prior to the September 2011 incident giving rise to the Section 1983 action:

5

County records further indicate that the 2011 seizure of Petitioner's car was his fourth vehicle seizure for violation of Michigan's nuisance abatement laws forbidding lewdness, assignation, or prostitution. *See id.*, Dkt. # 29-8.

The Grievance Administrator further reported at the June 6, 2016 hearing that she had then only recently discovered some new information relevant to Mr. Emanuel's petition for reinstatement -- specifically, a series of other non-disclosures and/or misrepresentations by Mr. Emanuel in other courts with regard to, and during the period of, his suspension -- and, therefore, requested additional time within which to investigate and file a supplemental report to address the newly discovered information. After hearing the Grievance Administrator's concerns, the panel agreed that a supplemental report was needed. Therefore, the hearing was adjourned and ordered continued after the Grievance Administrator's filing of the supplemental report and Mr. Emanuel's response thereto.

The supplemental report, and response and reply memoranda were thereafter filed, and the hearing on Mr. Emanuel's petition was continued on September 6, 2016.

---

Q: You went to court on the [2011] ticket, is that correct.

A: Correct. Yes.

Q: Has Ms. Folmer ever represented you before?

A: No.

[Emanuel Dep., pp. 79-80].

6

The Grievance Administrator's Supplemental Reinstatement Report detailed the non-disclosures/misrepresentations which had raised the concerns she had voiced at the June 6th hearing, to-wit,

(1) that Petitioner had failed to notify the clerks of the other U.S. District Courts where he is admitted and has practiced of this Court's suspension;

(2) that Petitioner failed to disclose in his Chapter 7 bankruptcy petition then-pending U.S. District Court cases for which he and/or his firm had contingent fee agreements and/or were otherwise owed money or had been paid fees;[4] and

(3) that despite having been reprimanded and suspended for the "commingling" of client funds, evidence discovered during the Bankruptcy Trustee's asset investigation disclosed that Petitioner once again commingled client funds with his own funds in his business checking account, which forced the Bankruptcy Trustee to recover from Petitioner's bank the fee portion of the settlement in *DeLeon v. Kalamazoo Cty. Road Comm'n*, WDMI No. 11-cv-539 (the "*DeLeon* case") which properly belonged to the bankruptcy estate.

The Grievance Administrator's Supplemental Report further brought to light Petitioner's unprofessional litigation conduct in the *DeLeon* case -- conduct for which he was sanctioned by U.S. District Judge Paul Maloney in the Western District of Michigan.

---

[4] A bankruptcy petitioner must disclose all of his assets in his bankruptcy petition. As an attorney, Petitioner Emanuel's assets included cases in which he was owed fees and cases in which he was a named party.

Judge Maloney found that Petitioner's conduct during his client Robert DeLeon's deposition was wholly unprofessional.  In relevant part, Judge Maloney stated in his Opinion and Order Granting Defendant's Motion for Sanctions:

> . . .  The Court has read the deposition transcript and listened to the audio recording.  Generally, the Court finds plaintiffs' counsel conducted himself unprofessionally.  Counsel for the Commission, Mr. Dedarian, displayed patience and restraint in the face of an obviously frustrating situation.  At the deposition, Mr. Emanuel described Mr. Dedarian's conduct with colorful language choices:  twice Mr. Dedarian was "being anal", twice Mr. Dedarian was "being asinine", and twice Mr. Dedarian was told that his "questions are a joke."  Mr. Emanuel told Mr. Dedarian to "just be quiet" and to "shut up."  Mr. Emanuel insisted that Mr. Dedarian was "being so unreasonable" and "being ridiculous."  Mr. Emanuel also claimed Mr. Dedarian was "so insulting," "so condescending to the witness," and "so over the top and overbearing."
>
> Mr. Emanuel also interfered with Mr. Dedarian's ability to ask questions of Mr. Deleon.  Over the first six-and-a-half minutes of the deposition, Mr. Dedarian managed to ask a total of nine questions of Mr. Deleon, with five of those questions occurring in the first forty seconds and a sixth was answered by Mr. Emanuel.  Mr. Emanuel interrupted so often and argued with Mr. Dedarian so frequently that Mr. Dedarian was not able to ask any other questions during those initial minutes.  At six-and-a-half minutes into the deposition, Mr. Emanuel accused Mr. Dedarian of "badgering my witness."  During the next three minutes and forty-five seconds, Mr. Dedarian only managed to ask one more question of Mr. Deleon because of Mr. Emanuel's continued interruptions.  Nevertheless, ten minutes and fifteen second[s] into the deposition, Mr. Emanuel again accused Mr. Dedarian of badgering Mr. Deleon.  The transcript is replete with instances where Mr. Emanuel would answer questions posed to Mr. Deleon.  At least three times, Mr. Emanuel instructed Mr. Deleon not to answer a question.  No less than eight times, Mr. Dedarian commented that Mr. Emanuel was answering the questions or Mr. Dedarian asked Mr. Emanuel to allow Mr. Deleon to answer the question.

[*See* 8/25/15 Opinion and Order Granting Defendant's Motion for Sanctions, Grievance

8

Administrator's Supp. Report, Ex. 25, pp. 8-9.][5]

Based upon all of the foregoing, the Grievance Administrator declined to recommend Petitioner for reinstatement to this Court.

## II. DISCUSSION

The requirements for reinstatement of a suspended or disbarred attorney are set forth in Eastern District of Michigan Local Rule 83.22(i)(2), which provides:

> The attorney seeking reinstatement must prove by clear and convincing evidence that --
>
> (A) the attorney has complied with the orders of discipline of this court, and all other disciplinary authorities.
>
> (B) the attorney has not practiced in this court during the period of disbarment or suspension and has not practiced law contrary to any other order of discipline.
>
> (C) the attorney has not engaged in any other professional misconduct since disbarment or suspension.
>
> (D) the attorney has the moral qualifications, competency and learning in the law required for admission to practice before this court, and that his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest.

E.D. Mich. L.R. 83.22(i)(2).

---

[5] Judge Maloney issued his Opinion and Order detailing the unprofessional conduct of Petitioner on August 25, 2015, *i.e.*, during the pendency of the State Bar's disciplinary proceedings giving rise to Petitioner's suspension from the Bar, after the hearing panel issued its findings of misconduct but before the Order of Suspension was entered. There is no indication that the State Bar was ever apprised of Judge Maloney's findings or the sanctions imposed on Mr. Emanuel. The panel will have more to say about Mr. Emanuel's recidivist conduct in this case below.

The panel finds that Petitioner Emanuel has failed to meet these standards.

First, the panel finds that Petitioner has failed to comply with the State Bar's Order of Suspension. The State Bar's Order of Suspension with Conditions specifically provided

> IT IS FURTHER ORDERED that in accordance with MCR 9.119(B), respondent must, on or before the effective date of this order [Jan. 28, 2016], in every matter in which respondent is representing a client in litigation, *file with the tribunal and all parties* a notice of respondent's disqualification from the practice of law.

[Order of Suspension with Conditions, Dkt. # 2-3 (emphasis added).]

While Petitioner submitted with his Petition for Reinstatement copies of purported Notices, bearing the full case captions of the cases in the various courts in which Mr. Emanuel was representing clients, and formatted as filed pleadings, which he claims to have served on "attorneys", Emanuel never filed any of these Notices with any of the courts. *See* PACER (CM/ECF): Docket Reports of WDNY Case No. 12-00183; SDNY Case No. 14007032; WDMI Case No. 11-539; EDMI Case No. 14-11130.

Nor did Petitioner notify the clerks of the U.S. District Courts for the Western District of New York, the Southern District of New York, or the Western District of Michigan of his suspension from the practice of law. The Local Rules of each of those courts, like Eastern District of Michigan Local Rule 83.22(g)(3), require an attorney admitted to practice before the court who is appearing or participating in a pending matter, upon being subject to an order of discipline, to promptly inform the clerk of the

10

order of discipline.[6] By Petitioner's own admission, he did not notify the Clerks of any of those courts of his suspension by this Court (or his underlying suspension by Michigan Attorney Discipline Board).[7]

---

[6] Western District of New York Local Rule 83.3 (d) provides, in relevant part:

Any Member of the bar of this Court who has been suspended, disbarred, or disciplined in any way in any district, state, commonwealth, or territory, or who has resigned from the bar of any such court while an investigation into allegations of misconduct by the attorney was pending, must notify the Clerk of Court of such action, in writing, within thirty (30) days thereafter, and must submit with the notification a copy of any order issued in the other jurisdiction.

Southern District of New York Local Civ. R. 1.5 (h) provides:

**Duty of Attorney to Report Discipline**.
(1) In all cases in which any federal, state or territorial court, agency or tribunal has entered an order disbarring or censuring an attorney admitted to the bar of this Court, or suspending the attorney from practice, whether or not on consent, the attorney shall deliver a copy of said order to the Clerk of this Court within fourteen days after the entry of the order.

Western District of Michigan L.Civ.R. 83.1(m)(iv)(A) provides

**Discipline by Other Jurisdictions; Obligation to report discipline.**
An attorney admitted to practice before this Court appearing or participating in a pending matter shall, on being subjected to an order of discipline, immediately inform the Clerk of the order of discipline.

[7] Had Petitioner notified the Clerks of those courts, reciprocal orders of suspension would have been issued. *See e.g.,* Western Dist. of N.Y. Local Rule 83.3(d), which provides, in pertinent part:

Upon receipt of a copy of an order [of another court] imposing discipline, the Chief Judge will issue an order disciplining the attorney to the same extent as imposed in the other jurisdiction.

11

Therefore, Petitioner has not proven by clear and convincing evidence his satisfaction of 83.22(i)(2)(A).

The panel further finds that Petitioner has failed to demonstrate that he has the moral character required to practice before this Court and that his resumption of the practice of law will not be detrimental to the integrity of the bar.  The panel is particularly troubled by Petitioner's lack of candor and veracity, as evidenced by misrepresentations he made -- under oath -- in his deposition testimony in his Section 1983 action, and the omissions in his personal bankruptcy petition.

With respect to the latter, while Petitioner acknowledges he did not disclose his contingency fee cases on his bankruptcy petition, he maintains that he ultimately did disclose all of cases for which he and/or his firm had contingent fee agreements and/or for which he was otherwise owed money or had been paid fees.  However, it was only after prodding by the Trustee and Mr. Emanuel's creditors at the Section 341 hearing that Petitioner did so.  This is not the candor required for practice in this Court.  *See* Civility Principles of the U.S. District Court for the Eastern District of Michigan.

The panel finds especially disturbing Mr. Emanuel's demonstrated lack of civility in the *DeLeon* deposition, and is equally disturbed -- if not more so -- by statements made by Mr. Emanuel in his Response to the Grievance Administrator's Supplemental Report.  By way of example the panel notes a few of the disrespectful, unfounded accusations contained therein which Mr. Emanuel directed at counsel for the Grievance Administrator:

12

> "The reports of Ms. Rosinski are replete with innuendo, half-truths, and smears. It reads more like a prosecuting document than an impartial report to this Panel. Ms. Rosinski's overreach was resoundingly rejected by a State Panel. . . . Now, . . . she gets a second bite of the apple and is determined to continue her unethical and irresponsible persecution. . . ."
>
> \*\*\*
>
> "Ms. Rosinski in her usual overreach and irresponsible innuendo and blame game . . . . It's the type of lazy, cavalier and irresponsible smear that has permeated Ms. Rosinski's approach to Petitioner throughout this matter."
>
> \*\*\*
>
> "Nothing that Petitioner has allegedly done is close or can compare to the criminal and illegal conduct of Mr. Burke and Buckfire, and Ms. Rosinski and the AGC's silence and inaction is deplorable and unconscionable."
>
> \*\*\*
>
> "As usual, Ms. Rosinski engages in character assassination and smear when she argues that Petitioner [sic] belief that he was using a legitimate IOLTA account 'raises significant issues of Petitioner's veracity or his competence....'"

The Civility Principles adopted by this Court state, "A lawyer shall conduct him/herself in accordance with the standards of professional integrity and personal courtesy set forth in the Civility Principles of the United States District Court for the Eastern District of Michigan," and that "[t]he lawyer shall abstain from disrespectful, disruptive and/or abusive behavior, and will at all times act with dignity, decency and courtesy." Specifically with respect to attorneys' responsibilities toward other counsel, the Civility Principles provide that attorneys, "will not . . . abuse or indulge in offensive conduct directed to other counsel, parties, or witnesses" and "will abstain from disparaging personal remarks or acrimony toward other counsel." Even after having been sanctioned by a federal judge for this same kind of unprofessional conduct, Petitioner has repeated it in this case. Quite simply, Petitioner's conduct here does not

13

comport with these Civility Principles.

For the foregoing reasons, the panel concludes that Petitioner has failed to demonstrate that he has the moral qualifications required to resume his practice of law before this Court.

## CONCLUSION

For all of the reasons stated above in this Memorandum Opinion and Order,

IT IS HEREBY ORDERED that the Petition of Lennox Emanuel for Reinstatement of his license to practice law before the United States District Court and the United States Bankruptcy Court for the Eastern District of Michigan is DENIED, without prejudice. Petitioner may re-apply for reinstatement in one year from the date of this Order.

SO ORDERED.

s:/ Gerald E. Rosen
United States District Judge


s:/ John Corbett O'Meara
United States District Judge


s:/ Gershwin A. Drain
United States District Judge

Date: November 1, 2016